UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| JUDITH A. STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-810-SEB-JMS |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment

[Docket No. 37] filed on July 17, 2009, pursuant to Federal Rule of Civil Procedure 56.

Plaintiff, Judith A. Stone ("Stone"), asserts the following five (5) claims against her

former employer, Defendant, Correctional Medical Services, Inc. ("CMS"):

discriminatory actions taken against her based on her age, in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; discriminatory

actions against her based on her sex, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq*.; hostile work environment; retaliation and retaliatory

discharge, pursuant to Indiana state law; and intentional infliction of emotional distress.

For the reasons explained below, we GRANT Defendant's Motion for Summary

Judgment in its entirety.

**Factual Background**

Plaintiff Stone, a sixty-six year old woman, was employed as Director of Nursing at CMS, a company that provides health care services to incarcerated offenders within the State of Indiana through contracts with the Indiana Department of Corrections ("IDOC"). Healthcare services are provided by CMS to prisoners at IDOC facilities, such as the Correctional Industrial Facility ("CIF") and the Pendleton Correction Facility ("PCF"). Affidavit of Royace Gibson ("Gibson Aff.") ¶ 3.  Both of these facilities are located on the same campus.  Gibson Aff. ¶ 3.  However, the population at PCF exceeds that at CIF. Deposition of Judith Stone ("Stone Dep.") at 27.

On or about September 5, 2005, Stone began her employment with CMS as the Director of Nursing at CIF.  Compl. ¶ 19.  She attended various training programs, including a two-week workshop at the CMS national office in St. Louis.  Stone Dep. at 22-23.  Royace Gibson ("Gibson") is a woman born in 1959, who held the position of regional manager at CMS after June 2006, whose responsibilities included oversight for the CIF and PFC facilities.  Gibson Aff. ¶¶ 1-2, 4.  Stone's duties included responsibility for administering and securing controlled substances for patient-inmates.  Stone acknowledged in writing that, as part of her duties, she was to make sure that controlled substances were counted after shifts, placed in a double locked, secure repository, and strictly maintained at all times.  Def.'s Ex. 7.

Stone's employment at CIF continued until December 8, 2006, at which time she was transferred, contrary to her wishes, to PCF.  Stone Dep. at 29.  Although CIF and

2

PCF share the same campus, according to Stone, PCF was a less desirable place to work than was CIF.  Stone Dep. at 92.  After her transfer to PCF, Stone retained her same salary and worked the same shift she had worked previously at CIF.  Id.  Stone claims that following her transfer she had to work an extra 30-45 minutes per day, due to routinely arising problems at PCF.  Stone Dep. at 93.

Responsibility for maintaining close and careful control over and records of controlled substances was an important part of every CMS employee's job.  A violation of CMS's policy regarding controlled substances could prompt termination of employment.  Def.'s Ex. 7.  Nurses were trained and required to closely monitor all controlled substances, including accounting for every pill at a shift change.  Gibson Aff. ¶ 6.  On January 7, 2007, after Stone was transferred to PCF, four boxes of Vicodin were found in Stone's former office at CIF.  Id. ¶ 8.  Vicodin is the brand name of a drug containing hydrocodone, a Schedule II narcotic.  Id.  Ms. Gibson investigated the discovery (id. ¶ 9; Exs. A, B) and, on January 9, 2007, Stone admitted in an e-mail that the medication was given to her to hold for destruction, and that she had overlooked the Vicodin boxes when she sent off other medication for destruction.  Def.'s Ex. 10.

Also on January 7, 2007, Lesa McClain, R.N. ("McClain"), who was on duty as a nurse at PCF, was caring for a patient with low blood sugar.  Gibson Aff.; Ex. C.  The patient had not shown any signs of improvement, despite the administration of fluids.  Seeking instructions, McClain attempted to contact the medical director, Dr. Coots, but, when she was unable to reach him, she telephoned Stone, but was unable to reach her as

3

well.  Finally, McClain contacted the Health Services Administrator who authorized the transfer of the patient to the hospital emergency room.  Eventually Dr. Coots returned McClain's phone call and countered the instructions to send the patient to the hospital, directing her instead to adjust the patient's IV dosage.  Stone also returned McClain's call and expressed her view that the Health Services Administrator had been correct and that the patient should be sent to the emergency room.  Id.; Stone Dep. at 39.  The patient was then sent to the emergency room, in contravention of Dr. Coots's directive.  Gibson Aff. ¶ 10.

Based on these incidents, on January 16, 2007, Gibson issued a Recommendation for Termination memorandum for Stone, (id. ¶ 11), citing her alleged improper handling of narcotics and her having ignored Dr. Coots's order concerning the patient transfer.  On or about January 23, 2007, Stone's employment with CMS was terminated.  Def's Ex. 12.

Stone filed her Complaint on May 27, 2008 in Marion Superior Court, alleging that CMS discriminated against her based on her age and gender, in violation of the ADEA and Title VII, respectively, and that CMS retaliated against her, in violation of Title VII, by transferring her to a new facility and subsequently terminating her.  In her Complaint, Stone also alleges a claim for intentional infliction of emotional distress.  On June 16, 2008, the case was removed by Defendant to this court.

**Legal Analysis**

4

## I.     Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325; Doe v. R.R. Donnelley & Sons, Co., 42 F.3d 439, 443 (7th Cir.1994).

In the present case, Stone has entirely failed to respond to CMS's motion for summary judgment. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. Pro. 56(e)(2). By not responding to the motion for summary judgment, Plaintiff has conceded Defendant's version of the facts. Brasic v. Heinemann's Inc., 121 F.3d 281, 286 (7th Cir. 1997); see also Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). The Court follows the principle of party representation, relying "on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Greenlaw v. U.S., 128 S.Ct. 2559, 2564 (2008). This does not alter the standard for assessing a Rule 56(c) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. Smith v. Severn, 129 F.3d 419, 426 (7th Cir. 1997).

Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir.1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary

judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The Seventh Circuit has made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir.1997).

## II.     Age and Sex Discrimination Claims

In Counts I and II, Stone asserts claims of discrimination against her based on her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., and discrimination based on her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  Pursuant to the ADEA, it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(2).  Similarly, under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex."  42 U.S.C. § 2000e, *et seq*.

7

A plaintiff may prove discrimination under the ADEA and Title VII either with direct evidence of discrimination or indirectly through the burden-shifting analysis established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[1]  <u>Scaife v. Cook County</u>, 446 F.3d 735, 739 (7th Cir. 2006).  Lacking any direct evidence of discrimination, Stone must proceed under the indirect method.  Under the <u>McDonnell Douglas</u> framework, a plaintiff must begin by establishing a *prima facie* case of discrimination. If one can be established, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff.  If the defendant can offer a legitimate, nondiscriminatory reason for the employment decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual.  <u>Nese v. Julian Nordic Const. Co.</u>, 405 F.3d 638, 641 (7th Cir. 2005).

A *prima facie* case requires a showing by the plaintiff that: (1) she was part of a class of persons in the protected group(s); (2) she performed her job according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of the protected class of persons were treated differently.  <u>Atanus v. Perry</u>, 520 F.3d 662, 672-73 (7th Cir. 2008).

To begin, Stone's argument in Counts I and II that her transfer from CIF to PCF is actionable is without merit because she has not established that her transfer was an

---

[1] This approach applies equally to claims brought under Title VII and claims brought under the ADEA.  <u>Barricks v. Eli Lilly and Co.</u>, 481 F.3d 556, 559 (7th Cir. 2007) (citing <u>Raymond v. Ameritech Corp.</u>, 442 F.3d 600, 610 (7th Cir. 2006)).

adverse employment action, which she must do in order to satisfy the third prong of the *prima facie* case.  "To be actionable, an employment action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  <u>McKenzie v. Milwaukee County</u>, 381 F.3d 619, 625 (7th Cir. 2004) (quoting <u>Traylor v. Brown</u>, 295 F.3d 783, 788 (7th Cir. 2002)).  Adverse employment actions include such actions as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998).

The uncontroverted evidence discloses that Stone's transfer from CIF to PCF was purely a lateral move.  Both facilities are located on the same campus.  Gibson Aff. ¶ 3.  Stone's salary, shift, job title, and work responsibilities all remained the same.  Although Stone's responsibilities apparently were increased slightly following the transfer, she was provided additional assistance in performing her duties in the form of an additional administrative assistant and two records clerks, all of whom reported directly to her at PCF.  Stone Dep. at 27-28.  In light of these facts, we are unable to find that Stone's transfer was in any way an adverse employment action as required by the third prong of the *prima facie* case factors.

Stone also contends that her termination was discriminatory.  However, Stone's claims under Counts I and II fail under that theory because she is unable to meet the second or fourth prongs of the *prima facie* case under the indirect method of proving discrimination for both her Title VII and ADEA claims.  Under the second prong of the

*prima facie* requirements, an employee must prove that she was performing her job up to her employer's reasonable expectations.  Haywood v. Lucent Techs., Inc., 323 F.3d 524, 530 (7th Cir. 2003).  In analyzing this prong, it is the perception of the employer that is relevant.  See, e.g., Little v. Illinois Dept. of Revenue, 369 F.3d 1007, 1013 (7th Cir. 2004) (citations omitted); Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 398 (7th Cir. 1998).  A court's inquiry into whether an employer's expectations are legitimate is limited.  See Dale v. Chicago Tribune Co., 797 F.2d 458, 463 n.3 (7th Cir. 1986).

Here, the undisputed evidence establishes that Stone was not performing her job responsibilities up to her employee's reasonable expectations.  In October of 2006, for example, Stone refused to follow her supervisor's directive to schedule twenty-five inmate visits per day with the doctor at CIF.  Gibson Aff. ¶ 2.  It was because of this refusal to schedule the doctor visits that Stone was transferred.  On January 7, 2007, Stone violated Dr. Coots's order not to send a patient to the hospital.  Stone Dep. at 39, 46; Gibson Aff. ¶ 10.  Similarly, on January 7, 2007, Stone was discovered to have left 400 units of narcotic medication unsecured in her office which she had failed to properly destroy in compliance with CMS policy.  Stone Dep. at 34-36; Def.'s Ex. 10.  Leaving narcotics unsecured and unattended in a prison environment is obviously a major problem.  Stone has thus failed to show that she was performing her job in line with the reasonable expectations of her employer so to satisfy the second prong of the *prima facie* criteria.

The fourth prong of the *prima facie* test requires a plaintiff to show that similarly

situated employees outside of the protected class were treated differently by the employer.  For an employee to be similarly situated to a plaintiff for purposes of a McDonnell Douglas comparison, "a plaintiff must show that there is someone who is directly comparable to her in all material respects."  Winsley v. Cook County, 563 F.3d 598, 605 (7th Cir. 2009) (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)).  A similarly situated employee is one who is "comparable to the plaintiff in all *material* respects." Crawford v. Ind. Harbor Belt R. Co., 461 F.3d 844, 846 (7th Cir. 2006) (emphasis in original) (citations omitted).

To determine whether two employees are directly comparable, courts consider factors such as whether the employees held the same job description, were subject to the same standards, were subordinate to the same supervisor, and had comparable experience, education, and other qualifications, if relevant.  Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692-93 (7th Cir. 2005).  While "[a] similarly situated employee need not be 'identical,' . . . the plaintiff must show that the other employee dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or the employer's treatment of [her]."  Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 592 (7th Cir. 2008) (citations and quotations omitted).  Plaintiffs are required to demonstrate that they are similarly situated with respect to performance, qualifications, and conduct.  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000) (citations omitted).

11

Stone has failed to satisfy this fourth prong of the *prima facie* case in that there is no evidence that any male or substantially younger employees were treated differently by CMS.  No evidence has been adduced to show that any other employees failed to properly secure narcotics, disregarded instructions to schedule patient appointments with doctors, or disregarded physician instructions.  It should also be noted that CMS hired Sandra Marcum, a female who was 58 years old (and therefore not substantially younger), to replace Stone.  Gibson Aff. ¶ 12.

For the foregoing reasons, Stone has failed to meet the second, third, and fourth prongs to establish a *prima facie* case under the <u>McDonnell Douglas</u> standard.  Because Stone has not met this standard in these respects, we "need not proceed to the remaining steps of the <u>McDonnell Douglas</u> framework."  <u>Contreras v. Suncast Corp.</u>, 237 F.3d 756, 761 (7th Cir. 2001).  Accordingly, we <u>GRANT</u> Defendant's Motion for Summary Judgment as to Stone's ADEA and Title VII discrimination claims.

## III.    Hostile Work Environment

Additionally, under Counts I and II of her complaint, Stone asserts a hostile work environment claim on the basis of her gender and/or age.  However, such a claim is foreclosed because Stone has not first exhausted her administrative remedies.  Administrative remedies are exhausted by the filing of a charge with the Equal Employment Opportunity Commission ("EEOC").  A charge filed with the EEOC must include all claims intended to be asserted by a claimant.  Under Seventh Circuit

precedent, a plaintiff may pursue a claim not explicitly included in the EEOC charge only if her allegations fall within the scope of the charges contained in the EEOC complaint. See Conner v. Ill. Dep't of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005). "[A] claim in a civil action need not be a replica of a claim described in the charge, but there must be 'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" Vela v. Village of Sauk Village, 218 F.3d 661, 664 (7th Cir. 2000) (quoting Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)).

Stone's EEOC charge contains no allegation of a hostile work environment or harassment. Def.'s Ex. 12. Similarly, there is no reason to conclude that an harassment charge logically relates to or grows out of an EEOC charge which alleges only age and gender discrimination. See Cheek, 31 F.3d at 503 ("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination.") (citations omitted). In Stone's EEOC charge, she makes no mention of having been subjected to a hostile work environment, no mention of any harassing activity by anyone at CMS, and no allegations of sexual harassment or hostility. See Def.'s Ex. 12. Thus, we find that Stone has failed to exhaust her administrative remedies with respect to her hostile environment claim, and therefore, we GRANT Defendant's Motion for Summary Judgment as to that claim.

## IV.  Retaliation

In Counts III and IV, Stone alleges retaliation with respect to her transfer and discharge under Indiana state law.[2]  Compl. ¶ 4.  Indiana applies the doctrine of employment at will, under which an employer may discharge an at-will employee for any cause or no cause at all without incurring liability.  Cripe, Inc. v. Clark, 834 N.E.2d 731, 734 (Ind. Ct. App. 2005).  However, Indiana courts have recognized three, limited exceptions to this doctrine, one of which appears to be at issue here.  In McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390 (Ind. 1988), the Indiana Supreme Court recognized as an exception to the at-will employment doctrine an employer discharge of an employee based on the employee's refusal to commit an illegal act for which the employee would be personally liable.  Id. at 393.  In order to qualify under this exception, a plaintiff must show that she was terminated because she refused to break a law for which she would be personally liable for penal consequences.  Meyers v. Meyers, 861 N.E.2d 704, 707 (Ind. 2007).  General complaints about an employer's practices are insufficient to support a claim of retaliatory discharge, even if the complaints pertain to regulatory or legal issues.  Campbell v. Eli Lilly and Co., 413 N.E.2d 1054, 1061 (Ind. Ct.

---

[2] We note that, while it is clear from her complaint that Stone is asserting retaliation and retaliatory discharge only under state law, and not pursuant to Title VII or the ADEA, any such claim under Title VII or the ADEA would be subject to dismissal for failure to exhaust administrative remedies.  Stone did not check the retaliation box on the EEOC charge form that she filed with the EEOC nor did the charge contain any allegation of retaliation for engaging in any protected activity under Title VII or the ADEA.  See Noreuil v. Peabody Coal Co., 96 F.3d 254, 258 (7th Cir. 1996) ("[R]etaliation and age discrimination claims are sufficiently dissimilar that an administrative charge of one fails to support a subsequent civil suit for the other.") (citations omitted).

14

App. 1980).

Here, Stone alleges that her employer's decision to discharge her from her employment was in response to her exercising her responsibilities as a nurse, when she refused to carry out instructions which jeopardized the health and safety of inmates, and complained about policies that endangered the health and safety of inmates.  However, even if true, these factors are insufficient for her to meet her burden because they show nothing more than that she made general complaints about her employer and the workplace.  Stone has failed to demonstrate that CMS ever requested that she commit any illegal act or, for that matter, that she refused to commit such an unlawful act at CMS's direction.  Because Stone has been unable to demonstrate this essential element of retaliation/retaliatory discharge under Indiana law, we GRANT Defendant's Motion for Summary Judgment as to these state claims.


**V.    Intentional Infliction of Emotional Distress**

In Count V, Stone alleges that CMS intentionally inflicted emotional distress upon her when it transferred her place of employment and subsequently terminated her employment.  Under Indiana law, to demonstrate intentional infliction of emotional distress (also known as the tort of outrage), a plaintiff must show that the defendant: (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress to another.  Tracy v. Financial Ins. Mgt. Corp., 458 F. Supp. 2d 734, 747 (S.D. Ind. 2006) (citing Bradley v. Hall, 720 N.E.2d 747, 752 (Ind. Ct. App.

15

1999).  Stone has failed to demonstrate that CMS engaged in any form of extreme and outrageous conduct.

In order to make such a showing, a plaintiff must show that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Lachenman v. Stice, 838 N.E.2d 451, 456-57 (Ind. Ct. App. 2005) (quotations omitted).  Here, there is absolutely no evidence to support a conclusion that CMS acted in such a manner when it transferred and subsequently terminated her for apparently legitimate reasons.  Accordingly, we GRANT Defendant's Motion for Summary Judgment on Stone's claim of intentional infliction of emotional distress.

## VI.    Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment is GRANTED in its entirety.  Final judgment shall enter accordingly.

IT IS SO ORDERED.


Date: _____12/01/2009_____


SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

16

Copies to:

Shellie Lynn Goetz
BAKER & DANIELS
shellie.goetz@bakerd.com

Edward E. Hollis
BAKER & DANIELS - Indianapolis
eehollis@bakerd.com

Michael C. Kendall
KENDALL LAW OFFICE
mckatlaw@aol.com